FILED
APR - 5 2021
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CJM FINANCIAL, INC.,

    Plaintiff and
    Counterclaim Defendant

v.

CIVIL ACTION NO. 4:20-cv-35

LEEBCOR SERVICES, LLC,

And

ASHFORD LEEBCOR ENTERPRISES, LLC,

    Defendants and
    Counterclaim Plaintiffs,

*MEMORANDUM OPINION AND ORDER*

Before the Court are Plaintiff's Motions to Dismiss Defendants' Amended Counterclaims under Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 47, 49. The Court finds that a hearing is not necessary. The Court will concurrently address both Motions to Dismiss, originally filed as separate Motions for the sake of judicial economy. Having reviewed the parties' filings, both matters are ripe for judicial determination.

    **I.    FACTUAL AND PROCEDURAL HISTORY**

The following facts taken from Leebcor Services, LLC's ("Leebcor") and Ashford Leebcor Enterprises, LLC's ("ALE") (collectively "Defendants"). Amended Counterclaims, ECF Nos. 39, 40, are considered true and cast in the light most favorable to Defendants. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

On or about July 2018, the United States Army Corps of Engineer ("USACE") awarded Leebcor a contract to construct a flight simulator and fuselage facility at Hurlburt Field (the "Hurlburt Field Project"). ECF No. 40 at ¶ 9. Leebcor then sought bids from subcontractors, who

1

were required to comply with the terms of the Hurlburt Prime Contract. *Id.* at ¶ 11. On or about January 3, 2019, Leebcor, a general contractor, entered a contract with Maston Creek Services, LLC ("Maston Creek"), a subcontractor, to assist with the Hurlburt Field Project. *Id.* at ¶ 17. On or about January 3, 2019, Maston and Leebcor executed that Subcontract Agreement in the amount of Five-Hundred Twenty-Eight Thousand Seven Hundred Seventy-One Dollars and 15/100 ($528,771.15). *Id.* at ¶ 17.

Similarly, on or about May 25, 2018, the United States Army Corp of Engineers ("USACE") awarded ALE a contract to construct new Guardian Angel facilities at Patrick Air Force Base, Florida (the "Guardian Angel Project"). ECF No. 39 at ¶ 9. Maston Creek, by its manager and sole member, Westrom, secured the bid to provide material, labor, and equipment for the concrete and ICF work consistent with the Guardian Angel Project Plans and Specifications. *Id.* at ¶ 13. On or about October 26, 2018, Maston and ALE executed the Subcontract Agreement for a fixed amount of One Million Nine Hundred Fifty Thousand Dollars ($1,950,000.00) in which Maston would provide the services related to the Guardian Angel Project. *Id.* at ¶ 17.

In January of 2019, Maston began work on the Guardian Angels Project. ECF No. 39 at ¶ 18. In March of 2019, Maston began work on the Hurlburt Field Project. ECF No. 40 at ¶ 18. Maston and Westrom communicated with CJM Financial, Inc. ("CJM") about "entering into a long-term factoring agreement whereby Maston would assign its right to collect its accounts receivable under the Hurlburt Field [and Guardian Angel Project] Subcontract[s] to CJM in exchange for immediate funding." ECF No. 39 at ¶ 19; ECF No. 40 at ¶ 19. Before CJM agreed to enter into the long-term factoring agreement, "CJM conducted due diligence to determine state of Maston['s] financials and its prior contractual performance." ECF No. 39 at ¶ 20; ECF No. 40 at ¶ 20.

In April 2019, Maston entered into a long-term factoring agreement with CJM "whereby Maston would assign its rights to collect its accounts receivable to CJM in exchange for immediate funding on an invoice-by-invoice basis." ECF No. 39 at ¶ 21; ECF No. 40 at ¶ 21. The factoring agreement was for both the Hurlburt Field and Guardian Angel Projects. Leebcor and ALE both state that "[b]y virtue of that assignment, CJM's right to payment from Leebcor was contingent on Maston Creek's performance in accordance with the terms of the" Hurlburt Field and Guardian Angels Project Subcontracts. ECF No. 39 at ¶ 23; ECF No. 40 at ¶ 23.

On April 29, 2019, Maston submitted its first pay application to ALE for Guardian Angels Project which ALE paid upon receipt of the funds from the Government. ECF No. 39 at ¶ 23. On June 30, 2019, Maston submitted its second pay application to ALE for $247,767.50 for additional labor, material, and equipment that Maston allegedly provided between May 1, 2019 and June 30, 2019 for the Guardian Angels Project. *Id.* at ¶ 25. Based on the Guardian Angels Subcontract, "Maston Creek was required to obtain partial waivers and release of liens for all of the labor, materials, and equipment that was included on the Second Pay Application." *Id.* at ¶ 26. Since Maston and Westrom "had represented that they had obtained partial waivers and release of liens by submitting the Second Pay Application, ALE included the amount of the Second Pay Application in ALE's next pay application to the Government." *Id.* at ¶ 27. ALE alleges that it believes that "CJM knew or should have known that reimbursement from ALE for any funds advanced to Maston Creek was contingent on Maston Creek's compliance with the terms of the Guardian Angel Subcontract, yet CJM failed to ensure that Maston Creek performed pursuant to the terms of the Guardian Angel Subcontract." *Id.* at ¶ 28. However, while ALE waited for payment from the Government, ALE was notified of non-payment from Maston's material suppliers. *Id.* at ¶ 29. ALE also alleges that it believes that "Westrom, through Maston, misdirected payments made

from CJM and ALE to Maston Creek by paying those funds to material suppliers for which those funds were not intended and/or to satisfy his personal financial obligations." *Id.* at ¶ 30. As a result, ALE withheld payments to Maston under the Second Pay Application because Maston failed to perform under the Guardian Angel Subcontract. *Id.* at ¶ 35. Thus, CJM, who had advanced Matson the funds for the Second Pay Application also did not receive payment from ALE. On August 26, 2019, ALE sent Maston a notice to cure but Maston responded that it had no intention of curing its breach of contract. *Id.* at ¶¶ 42-43. On September 2, 2019, ALE terminated the Guardian Angels Subcontract with Maston. *Id.* at ¶ 44.

Similarly, on June 4, 2019, Maston submitted its first pay application to Leebcor for $191,155.00 for labor, material, and equipment Maston provided between March 1, 2019 and May 31, 2019 for the Hurlburt Project. ECF No. 40 at ¶ 24. Maston was required to obtain partial waivers and release of liens for all labor, materials, and equipment provided on its pay applications submitted to Leebcor. *Id.* at ¶ 26. On June 5, 2019, CJM paid Maston a portion of the Hurlburt Pay Application. *Id.* at ¶ 28. Meanwhile Leebcor waited for payment from the Government on its payment application, it received notice that Maston Creek had not paid its material supplies for the Hurlburt Field Project. *Id.* at ¶ 30. Leebcor allages that Westrom, through Maston, "misdirected payments made from Leebcor to Maston for intended purposes and/or to satisfy his personal financial obligations." *Id.* at ¶ 31. As a result, Leebcor withheld payments to Maston under the Hurlburt Pay Application. *Id.* at ¶ 36. On August 26, 2019, Leebcor sent Maston a notice to cure but Maston responded that it had no intention of curing its breach of contract. *Id.* at ¶¶ 43-44. On September 9, 2019, Leebcor terminated that Hurlburt Field Subcontract with Maston. *Id.* at ¶ 45.

After the Court partially granted and denied CJM's Motion to Dismiss, CJM filed an Amended Complaint, on August 28, 2020, seeking $411,958.65 against Leebcor and ALE. *See*

ECF Nos. 21, 22. CJM alleges Derivative Breach of Contract GAP Subcontract (Count I) and Breach of Contract (Count II) against ALE. *Id.* Moreover, CJM alleges Derivative Breach of Hurlburt Subcontract (Count IV) and Breach of Contract (Count V) against Leebcor. *Id.* CJM also alleges Quantum Meruit/Unjust Enrichment against ALE and Leebcor (Count V). *Id.* On September 29, 2020, ALE and Leebcor filed Answers and Counterclaims. ECF Nos. 32, 33.

On November 10, 2020, ALE and Leebcor filed separate Amended Third Party-Complaints Against Maston and Westrom as well as Amended Counterclaims against CJM. ECF Nos. 39, 40. ALE alleges the following Amended Counterclaims against CJM: Breach of Contract[1] (Count III), Declaratory Judgment (Count IV), Civil Conspiracy (Count V), and Statutory Conspiracy under Va. Code §§ 18.2-499, -500 (Count VI). ECF No. 39. Similarly, Leebcor alleges the following Amended Counterclaims against CJM: Breach of Contract[2] (Count III), Declaratory Judgment (Count IV), Civil Conspiracy (Count V), and Statutory Conspiracy under Va. Code §§ 18.2-499,-500 (Count VI). ECF No. 40.

On November 24, 2020, CJM filed the instant Motions to Dismiss Leebcor and ALE's Amended Counterclaims. ECF Nos. 47, 49. On December 8, 2020, ALE and Leebcor responded in opposition. ECF Nos. 52, 53. On December 14, 2020, CJM replied. ECF Nos. 55, 56.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. The United States Supreme Court has stated that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1] ALE asserts this claim only to the extent that the Court finds a direct contract exists between ALE and CJM as alleged in Count II of the Amended Complaint. *See* ECF No. 39, n. 2.
[2] Leebcor asserts this claim only to the extent that the Court finds a direct contract exists between Leebcor and CJM as alleged in Count IV of the Amended Complaint. *See* ECF No. 40, n. 2.

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Specifically, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Moreover, at the motion to dismiss stage, the court is bound to accept all of the factual allegations in the complaint as true. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Assessing the claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.)). In considering a Rule 12(b)(6) motion to dismiss, the Court cannot consider "matters outside the pleadings" without converting the motion to a summary judgment. Fed. R. Civ. P. 12(d). Nonetheless, the Court may still "consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *see also* Fed. R. Civ. P. 10(c).

### III. DISCUSSION

As an initial matter, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. CJM, is an Iowa corporation and maintains its principal place of business in Polk, County Iowa. ECF No. 40 at ¶ 6. Leebcor is a Virginia limited liability company that maintains its principal place of business in Williamsburg, Virginia. *Id.* at ¶ 5. The amount in controversy exceeds $75,000. *Id.* at ¶ 1. ALE is a Virginia limited liability company with its principal place of business in Williamsburg, Virginia. ECF No. 39 at ¶ 5. In a diversity action, district courts apply federal procedural law and state substantive law. *See Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996). Federal courts sitting in diversity jurisdiction apply the choice of law rules in the

state in which it sits. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (noting that forum state's choice of law rules is substantive).

In Virginia, if a contract includes a choice of law provision, that provision governs. *Paul Business Systems, Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 397 (1990). If the contract does not include a choice of law provision, the place where the contract is made governs. *Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 419 (4th Cir. 2004) (noting that "[q]uestions concerning the validity, effect, and interpretation of a contract are resolved according to the law of the state where the contract was made"). A contract is made when the last act to complete the contract is performed. *Id.*

Here, there is no dispute that Virginia law is applicable to all Count II of both Amended Counterclaims. *See* ECF Nos. 39, 40, 48, 50. The relevant subcontracts in this case, which are relevant to Counts III of Leebcor and ALE's Amended Counterclaims contain a provision that Virginia law applies. ECF No. 39, Exhibit 1 at ¶ 24 ("This Agreement is to be governed by and construed in accordance with the laws of the state of the Buyer's office entering into this Agreement"); ECF No. 40, Exhibit 1 at ¶ 24 (noting the same). For both Leebcor's and ALE's direct breach of contract claim, the alleged contract was made in Virginia. Moreover, for Counts IV, V, and VI, both Leebcor and ALE allege liability under Virginia law. *See* ECF Nos. 39, 40. Therefore, the Court will apply Virginia law in reviewing these counts.

**A. Leebcor's Amended Counterclaims Against CJM**

1. <u>Count III: Breach of Contract</u>

To state a claim for breach of contract in Virginia, a plaintiff must show: (1) a legally enforceable contract between plaintiff and defendant; (2) the defendant's violation or breach of contract; and (3) an injury or harm to the plaintiff caused by the defendant's breach. *Navar, Inc.*,

7

291 Va. 338, 344 (2016). A legally enforceable contract requires an offer, acceptance, and valuable consideration. *Montagna v. Holiday Inns, Inc.*, 221 Va. 336, 346 (1980).

While Leebcor denies a contract exists, Leebcor alleges in the alternative that CJM breached its contract with Leebcor "only to the extent that the Court finds a direct contract exists between Leebcor and CJM." ECF No. 40 at ¶¶ 104-118; *see also*, ECF No. 52 at 8. However, on August 14, 2020, the Court ruled that there was an enforceable contract between Leebcor and CJM based on the facts alleged in CJM's Complaint. *See* ECF No. 21 at 8-9; *see also*, ECF No. 1 at ¶¶ 15- 23 (CJM's Complaint). Notably, the Court held that CJM had sufficiently pleaded facts showing that there was an offer, acceptance, and consideration to form a validly enforceable contract between Leebcor and CJM. *Id.* CJM alleged that it directly notified Leebcor of the assignment, Leebcor confirmed their notification of the assignment, and that Leebcor also sent emails indicating whether the payment was approved. *Id.*

Here, the facts regarding the formation of a contract remain the same. Leebcor states that "in mid-April 2019, Maston Creek and CJM entered into a factoring agreement whereby Maston Creek would assign its right to collect its accounts receivable to CJM in exchange for immediate and advanced funding." ECF No. 40 at ¶ 20. Leebcor states that Maston "assigned its right to collect its accounts receivable under the Hurlburt Field Subcontract to CJM in exchange for immediate funding." ECF No. 40 at ¶ 22. Leebcor benefitted from being able to hire lower cost subcontractors and by CJM advancing funds to Matson to complete the project. Therefore, the first element is satisfied.

However, Leebcor has not pled sufficient facts to satisfy the second element showing that CJM breached the contract. Specifically, Leebcor alleges that CJM "had an affirmative duty to ensure that Maston Creek met the terms of the Hurlburt Field Subcontract." *Id.* at ¶ 23, 106. Yet,

8

Leebcor does not allege any facts which show that CJM knew that it had this duty, agreed to it, or that it was part of its consideration in forming a contract. Rather, Leebcor merely alleges that CJM had the duty to ensure that Maston "performed in accordance with the terms of the Hurlburt Field Subcontract," which included confirming that Maston obtained the proper "partial waivers and release of liens for all labor, materials, and equipment before it submitted a pay application." *Id.* at ¶¶ 107-108. Leebcor also alleged that "[*u*]*pon information and belief*, CJM had knowledge that Maston Creek had a history of deficient performance on construction contracts including, but not limited to, failing to pay its own vendors." *Id.* at ¶ 111 (emphasis added). However, even if CJM had knowledge of Maston's deficient performance, this is not a fact supporting that CJM had an affirmative duty to ensure that Maston complied with all the terms of the Hurlburt Field Subcontract. Leebcor also alleged that "CJM failed to ensure that Maston Creek paid for its labor, materials, and equipment in accordance with the Hurlburt Field Subcontract. CJM also failed to ensure that the actual work-in-place met the Hurlburt Field Subcontract specifications." *Id.* at ¶ 112. Leebcor then concludes "CJM's failure to ensure Maston Creek's continued compliance with the terms of the Hurlburt Field Subcontract was the proximate and necessary cause of Leebcor's damages." *Id.* at ¶ 116. Accordingly, Leebcor seeks damages "in an amount not less than [$750,000.00], plus interest and costs, including attorneys' fees." *Id.* at ¶ 118. Although Leebcor also demands the same amount from Maston and Westrom in Count I for breach of the Hurlburt Field, Leebcor does not allege CJM was a party to those subcontracts. *See Id.* at ¶¶ 82-92.

The Court finds that Leebcor's allegations do not match with the fact that CJM and Leebcor agreed that CJM would be assigned Maston's right to collect its accounts receivable. Leebcor has not plead sufficient facts stating that CJM also agreed to ensuring that Maston Creek performed the terms of the Hurlburt Field Subcontract. The Amended Complaint states that CJM only agreed

to advance Maston a portion of the funds Leebcor promised to pay CJM. ECF No. 22 at ¶ 57. That is, the facts alleged only show that CJM agreed to advancing funds to Maston as it progresses on the Hurlburt Field Subcontract and that Leebcor would then pay CJM those funds, which it would have originally owed Maston. Leebcor acknowledges that it agreed to the assignment.

Moreover, the Court previously found that CJM had sufficiently pleaded facts showing that it fulfilled its contractual obligation when it advanced funds to Maston in connection with Maston's payment applications. *See* ECF No. 21 at 9. The Court then recognized that Leebcor was in breach because it "refused to pay CJM, as promised, and therefore suffered monetary damages as a result." *Id.*

Therefore, Leebcor's **Count III is dismissed with prejudice.**

2. Count IV: Declaratory Judgment Claim

Leebcor's second counterclaim "requests that this Court declare that CJM is not entitled to payment under the Pay Application because its assignor, Maston Creek, breached the Hurlburt Field Subcontract in the full amount of the Pay Application." ECF No. 40, ¶ 130. The Court finds that Leebcor's counterclaim seeking a declaratory judgment is untimely.

While a federal court "has great latitude in determining whether to assert jurisdiction over declaratory judgment actions, [the Court] should refuse to entertain a declaratory judgment only for good cause." *The Hipage Co. v. Access2Go, Inc.*, 589 F. Supp. 2d 602 (E.D. Va. 2008). As courts have uniformly recognized, "'[t]his power has consistently been considered discretionary.'" *AvePoint, Inc. v. Knickerbocker*, 475 F. Supp. 3d 483, 488 (E.D. Va. 2020) (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996)). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has provided guidance on the exercise of this discretionary power, commenting that a declaratory judgment action is appropriate when the judgment will serve

a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* That is, the purpose of the Declaratory Judgment Act is to 'allow[] the uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings.'" *Hipage Co. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 615 (E.D. Va. Oct. 29, 2008) (quoting *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998)). Accordingly, a declaratory judgment is "unavailable in situations where ... claims and rights asserted have fully matured, and the alleged wrongs have already been suffered." *Hanback v. DRHI, Inc.*, 94 F. Supp. 3d 753, 758 (E.D. Va. 2015), *aff'd*, 647 F. App'x 207 (4th Cir. 2016) (citation omitted).

In other words, when a breach of contract has already occurred and damages have already accrued, "there is no guidance" that can be offered via a declaratory judgment to steer "conduct away from a breach of contract." *Id.* (citing *The Hipage Co., Inc.* at 615 (E.D. Va. 2008)); *see also Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d 689, 695 (E.D. Va. 2010) (noting that declaratory judgments are inappropriate "if the questionable conduct has already occurred or damages have already accrued"). Thus, once a suit for actual relief has been filed, "the 'insecurity' of looming litigation does not exist" and there is no reason for courts to offer guidance about what the parties should have done to avoid litigation. *Id.* In summary, declaratory judgments "are untimely if the questionable conduct has already occurred or damages have already accrued." *Tapia v. United States Bank, N.A.*, 718 F. Supp. 2d 689, 695 (E.D. Va. June 22, 2010).

Virginia law holds the same. *See Cordon v. Aurora Loan Servs.*, 2010 U.S. Dist. LEXIS 89031, at *20 (E.D. Va. Aug. 26, 2010) (a federal district court sitting in diversity dismissed a plaintiff's request for declaratory judgment as untimely under Va. Code § 8.01-191. 2010 because "the purpose of the declaratory judgment statutes is to provide a mechanism for resolving

11

uncertainty in controversies over legal rights, without requiring one party to invade the asserted rights of another in order to permit an ordinary civil action for damages.") (quoting *Umstattd v. Centex Homes*, 274 Va. 541, 548 (2007)).

In the instant matter, a declaratory judgment is untimely because CJM's alleged questionable conduct has already occurred and Leebcor has already allegedly suffered damages because of CJM's alleged breach.

Therefore, Leebcor's Count IV is **dismissed with prejudice**.

3. <u>Count V and Count VI: Civil and Statutory Conspiracy Against All Defendants</u>

To state a claim for civil conspiracy, "a plaintiff must establish that at least one member of the conspiracy, in agreement with another member, committed an act that was itself wrongful or tortious, and that such act damaged the plaintiff." *See* Va. Code § 18.2-499; *L-3 Communs. Corp. v. Serco, Inc.*, 926 F.3d 85, 92 (4th Cir. 2019). Specifically, Virginia law provides a civil cause of action for "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of...willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever...." Va. Code § 18.2-499(A); 18.2-500 (providing damages and fees); *see also, Steele v. Goodman*, 382 F. Supp. 3d 403, 423 (E.D. Va. 2019). Moreover, "to prevail on claim for statutory conspiracy under Virginia law, plaintiff must ultimately prove, by clear and convincing evidence, that (1) defendant attempted to conspire with one or more of the other defendants to harm plaintiff; (2) defendant acted with legal malice towards plaintiff; and (3) the conspiratorial actions of defendant and one or more of the other defendants caused plaintiff to suffer damages." *See Steele v. Goodman*, 382 F. Supp. 3d 403 (E.D. Va. 2019).

To recover treble damages in a civil action, "the plaintiff must prove the conspiracy by clear and convincing evidence." *AvalonBay Communities, Inc. v. Willden*, No. 1:08cv777, 2009 WL

2431571, at *8 (E.D. Va. Aug. 7, 2009) (citing *Michigan Mut. Ins. Co. v. Smoot*, 128 F. Supp. 2d 917, 924–25 (E.D. Va. 2000); *William v. Dominion Tech. Partners, LLC*, 265 Va. 280, 290 (2003)).

Fraud-based conspiracy claims must be pled with "particularity." *See* Fed. R. Civ. P. 9(b); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 790 (4th Cir. 1999) (affirming dismissal of claim for conspiracy to defraud because it was not pled with particularity); *see also BHR Recovery Communities, Inc. v. Top Seek, LLC*, 355 F. Supp. 3d 416, 425 (E.D. Va. 2018) ("Like fraud, a plaintiff must plead business conspiracy with particularity."). A plaintiff is required to show proof of "legal malice"— "that the defendant acted intentionally, purposely, and without lawful justification." *AvalonBay Communities*, 2009 WL 2431571, at *8 (citing *Commercial Bus. Sys., Inc. v. BellSouth Services, Inc.*, 249 Va. 39 (1995)). Although the statute does not require a showing that a defendant's co-conspirator acted with legal malice, it does require that one of the parties "acting with legal malice, conspire[d] with another party to injure the plaintiff." *BHR Recovery Communities*, 355 F. Supp. 3d at 425 (quoting *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 108 F. 3d 522, 527 (4th Cir. 1997)); *see also, Federated It, Inc. v. Anthony*, No. 1:18CV1484 (LMB/JFA), 2020 WL 4747784, at *11 (E.D. Va. May 12, 2020), *report and recommendation adopted*, No. 118CV1484LMBJFA, 2020 WL 3057760 (E.D. Va. June 8, 2020).

In Count V, Leebcor alleges that "CJM, Maston Creek, and Westrom acted in concert and combination with one another to effectuate Maston Creek and Westrom's comingling, diversion, and misuse of the funds paid to Maston Creek." ECF No. 40 at ¶ 132. Further, Leebcor alleges that "CJM was responsible for conducting due diligence into Maston Creek's financials and prior contractual performance before agreeing to factor the Hurlburt Field Subcontract." *Id.* at ¶ 133.

13

Leebcor then alleges that "CJM ... knew that Maston Creek could not and/or would not perform in accordance with the Hurlburt Field Subcontract, yet CJM continued to advance Maston Creek and Westrom funds even after Maston Creek failed to perform." *Id.* at ¶ 134. Leebcor alleges that "the purpose of the combination among CJM, Maston Creek, and Westrom was to defraud Leebcor by utilizing Leebcor's financial assets as a *de facto* insurance policy against Maston Creek and Westrom's comingling, diversion, and misuse of the funds paid by CJM to Maston Creek." *Id.* at ¶ 135.

In Count VI, Leebcor alleges "CJM, Maston Creek, and Westrom have combined, associated, and conspired with each other to injure Leebcor in its reputation, trade, business, and profession, all in violation of Va. Code §§ 18.2-499 and 18.2-500." *Id.* at ¶ 139. Similar to Count V, Leebcor alleges CJM knew that "...Maston Creek could not and/or would not perform in accordance with the Hurlburt Field Subcontract, [and that] CJM, Maston Creek, and Westrom combined, associated, and conspired to allow Westrom to comingle and divert the funds that CJM paid to Maston Creek while utilizing Leebcor as a backstop to satisfy wrongful CJM's payment of those funds to Maston Creek." *Id.* at ¶ 141. According to Leebcor, it "has been damaged as a direct and proximate result of the actions of CJM, Marton Creek, and Westrom, to defraud Leebcor," and it seeks "three times its actual damages incurred, plus its attorneys' fees." *Id.* at ¶¶ 142-43.

The Court finds that Leebcor has failed to meet the threshold requirement of pleading either civil or statutory conspiracy with particularity. Rather, Leebcor has made conclusory allegations, and, thus, "'it is not enough merely to state that a conspiracy took place.'" *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703-04 (E.D. Va. 2007) (quoting *Johnson v. Kaugars,* 14 Va. Cir. 172, 176 (Va. Cir.1988). Virginia law also requires a plaintiff to allege "some details of time and place and the alleged effect of the conspiracy." *Johnson*, 14 Va. Cir. at 176.

Here, for example, Leebcor has not alleged any facts to support its conclusory allegations that CJM, Maston, and Westrom acted in "concert and combination with one another to effectuate...comingling, diversion, and misuse of the funds paid to Maston Creek." ECF No. 40 at ¶ 132. Rather, Leebcor only alleges that they did. Similarly, for Count VI, Leebcor only makes the conclusory allegation that "CJM, Maston Creek, and Westrom have combined, associated, and conspired with each other to injure Leebcor." *Id.* at ¶ 139. Leebcor also makes the conclusory allegation CJM knew that "...Maston Creek could not" complete the Hurlburt Field Subcontract and that "CJM, Maston Creek, and Westrom combined, associated, and conspired to allow Westrom to comingle and divert the funds...." *Id.* at ¶ 141.

To withstand a motion to dismiss, a plaintiff must "plead the requisite concert of action and unity of purpose in more than mere conclusory language." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F.Supp.2d 483, 499–500 (E.D.Va.2003). Leebcor has neither alleged details about how, when, and where the alleged conspiracy occurred nor its effect. "Where, as here, 'there are only vague, conclusory allegations of conspiracy the claim fails at the threshold.'" *Redman v. Fed. Nat. Mortg. Ass'n*, No. 3:14CV00006, 2015 WL 149833, at *6 (W.D. Va. Jan. 12, 2015) (quoting *Firestone*, 485 F. Supp. 2d at 704).

Therefore, Leebcor's Counts V and VI are **dismissed with prejudice.**

## B. ALE's Amended Counterclaims Against CJM

ALE alleges the same Counts against CJM with respect to the Guardian Angel Project. ECF No. 39.

### 1. Count III: Breach of Contract

Like Leebcor, ALE alleges that "CJM had an affirmative duty to ensure that Maston Creek met the terms of the Guardian Angel Subcontract." ECF No. 39 at ¶ 73. ALE also alleges that "if

CJM failed to ensure that Maston Creek performed in accordance with the terms of the Guardian Angel Subcontract, ALE had no obligation to pay CJM. *Id.* at ¶ 74. Moreover, ALE alleges that "The Guardian Angel Subcontract required Maston Creek to obtain partial waivers and release of liens for all labor, materials, and equipment before it submitted a pay application. *Id.* at ¶ 75. Then, ALE alleges that "CJM breached its contract with ALE, by failing to ensure that Maston Creek performed pursuant to the required contractual terms, plans, and specifications of the Guardian Angel Subcontract." *Id.* at ¶ 77. ALE bases its allegation "upon information and belief, [that] CJM had knowledge that Maston Creek had a history of deficient performance on construction contracts including, but not limited to, failing to pay its own vendors." *Id.* at ¶ 78. In all, ALE alleges that CJM breached its contract "by failing to ensure that Maston Creek performed pursuant to the required contractual terms, plans, and specifications of the Guardian Angel Subcontract." *Id.* at ¶¶ 77-83.

Like Leebcor, the Court finds that ALE has not pleaded facts showing that CJM knew or agreed to an affirmative duty that CJM would ensure that Maston would comply with all the requirements of the Guardian Angel Project. Specifically, ALE has not plead facts stating that CJM's assignment extended beyond its right to collect its accounts receivable on behalf of Maston.

Therefore, ALE's Count III is **dismissed with prejudice.**

2. Count IV: Declaratory Judgment Claim

Based on the similar factual allegations as Leebcor, ALE also seeks a declaratory judgment against CJM. ECF No. 39 at ¶¶ 86-97. ALE seeks a declaration as to whether CJM, as Maston's assignee, is entitled to payment of the Second Pay Application. *Id.* at ¶¶ 86-97. ALE alleges "CJM stepped] into the shoes of Maston Creek as it relates to the Pay Application; and therefore, the terms of the Guardian Angel Subcontract apply to CJM's ability to collect from ALE." *Id.* at ¶ 90.

ALE alleges that it "refused to pay CJM because Maston Creek breached the Guardian Angel Subcontract and the damages for such breach constitute the full amount (and more) of the Pay Application." *Id.* at ¶ 92. ALE claims "this controversy did not arise until CJM refused to accept ALE's defense to CJM's demand for payment under the Second Pay Application." *Id.* at ¶ 95.

As detailed above, the case law in both the Fourth Circuit and Virginia is clear that declaratory judgments "are untimely if the questionable conduct has already occurred or damages have already accrued." *Tapia v. United States Bank, N.A.*, 718 F. Supp. 2d 689, 695 (E.D. Va. June 22, 2010). Here, a declaratory judgment is untimely because CJM's alleged questionable conduct has already occurred and ALE has already alleged suffered damages because of ALE's alleged breach.

Therefore, ALE's Count IV is **dismissed with prejudice**.

3. Counts V and VI: Civil Conspiracy and Statutory Conspiracy Against "All Defendants"

Finally, like Leebcor, ALE also alleges the same Count V and Count VI against CJM. In support of Count V, ALE alleges that "CJM, Maston Creek, and Westrom acted in concert and combination with one another to effectuate Maston Creek and Westrom's comingling, diversion, and misuse of the funds paid to Maston Creek." ECF No. 39 at ¶ 99. ALE alleges that CJM, Maston, and Westrom "knew that Maston Creek could not and/or would not perform in accordance with the Guardian Angel Subcontract," and that CJM continued to advance funds after Maston failed to perform. Id. at ¶ 101. ALE claims that "[t]he purpose of the combination among CJM, Maston Creek, and Westrom was to defraud ALE by utilizing ALE's financial assets as a *de facto* insurance policy against Maston Creek and Westrom's comingling, diversion, and misuse of the funds paid by CJM to Maston Creek." *Id.* at ¶ 102. ALE alleges that the conspiracy enabled Westrom "to divert funds that CJM paid to Maston Creek in order to pay suppliers who were not otherwise entitled to those funds and/or satisfy his personal financial obligations." *Id.* at ¶ 104.

Similarly, for Count VI, ALE alleges that "CJM, Maston Creek, and Westrom have "combined, associated, and conspired with each other to injure ALE in its reputation, trade, business, and profession, all in violation of Va. Code §§ 18.2-499 and 18.2-500." *Id.* at ¶¶ 107-08. ALE alleges there was a conspiracy to "defraud ALE into paying CJM funds for which CJM is not otherwise entitled." *Id.* at ¶ 111. According to ALE, it "has been damaged as a direct and proximate result of the actions of CJM, Maston Creek, and Westrom, to defraud ALE," and it seeks "three times its actual damages incurred, plus its attorneys' fees." *Id.* at ¶¶ 111-12.

The Court finds that ALE has failed to plead both Counts V and VI with particularity as required by law. *See Strum v. Exxon Co., USA*, 15 F.3d 327, 331 (4th Cir. 1994) ("[A plaintiffs cannot simply cry fraud and thereby escape summary judgment . . . the circumstances constituting fraud or mistake shall be stated with particularity.") (quoting Fed. R. Civ. P. 9(b)).). Specifically, ALE does not detail any facts to support its conclusory allegations about when, how, or where the Maston, Westrom, and CJM allegedly "acted in concert and combination with one another" to defraud ALE. Moreover, ALE's conspiracy claims are not premised on any underlying tort. ALE merely alleges that CJM, Maston, and Westrom conspired "to defraud ALE into paying CJM funds for which it is not otherwise entitled." *See Ransome v. O'Bier*, No. 3:16-CV-01002, 2017 WL 1437100, at *4 (E.D. Va. Apr. 20, 2017) ("'In Virginia, a conspiracy claim must relate to an underlying tort.'") (quoting *Commercial Bus. Sys., Inc. v. Halifax Corp.*, 253 Va. 292, 300 (1997)).

Therefore, ALE's Counts V and VI are **dismissed with prejudice.**

## IV. CONCLUSION

Based on the foregoing reasons, CJM's Motion to Dismiss Leebcor's Amended Counterclaims, ECF No. 47, is **GRANTED.** Accordingly, Leebcor's Counts III, IV, V, and VI against CJM in its Amended Counterclaim, ECF No. 40, are **DISMISSED WITH PREJUDICE** as to CJM. Similarly, CJM's Motion to Dismiss ALE's Amended Counterclaim, ECF No. 49, is **GRANTED.** Accordingly, ALE's Counts III, IV, V, and VI against CJM in its Amended Counterclaim, ECF No. 39, are **DISMISSED WITH PREJUDICE.**

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
April 5, 2021

_____
UNITED STATES DISTRICT JUDGE